1
2
3
4
5                     UNITED STATES DISTRICT COURT
6                    EASTERN DISTRICT OF WASHINGTON

7   PAULINE YOUNG,                   )
                                     )   No. CV-10-0323-CI
8            Plaintiff,              )
                                     )   ORDER GRANTING DEFENDANT'S
9   v.                               )   MOTION FOR SUMMARY JUDGMENT
                                     )
10  MICHAEL J. ASTRUE, Commissioner  )
    of Social Security,              )
11                                   )
             Defendant.              )
12  _____ )

13       BEFORE THE COURT are cross-Motions for Summary Judgment. (ECF

14  No. 20, 22.)  Attorney Maureen J. Rosette represents Pauline L.

15  Young (Plaintiff); Special Assistant United States Attorney Kathryn

16  A.  Miller  represents  the  Commissioner  of  Social  Security

17  (Defendant).   The  parties  have  consented  to  proceed  before  a

18  magistrate judge.  (ECF No. 7.)  After reviewing the administrative

19  record and briefs filed by the parties, the court **GRANTS** Defendant's

20  Motion  for  Summary  Judgment  and  **DENIES**  Plaintiff's  Motion  for

21  Summary Judgment.

22                          **JURISDICTION**

23       Plaintiff  protectively  filed  a  Title  II  application  for  a

24  period of disability and disability insurance benefits, along with

25  a Title XVI application for supplemental security income on April 7,

26  2008.  (Tr. 12; 143.)  She alleged disability due to Graves Disease,

27  depression and anxiety.  (Tr. 145.)  Her alleged onset date is

28  October  17,  2007.   (Tr.  146.)   Plaintiff's  claim  was  denied

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 1

initially and on reconsideration.  She requested a hearing before an administrative law judge (ALJ).  (Tr. 77-86.)  A hearing was held on November 19, 2009, at which Vocational Expert Robert Aslan, and Plaintiff, who was represented by counsel, testified.  (Tr. 36-71.) ALJ Robert S. Chester presided.  (Tr. 36.)  The ALJ denied benefits on December 7, 2009.  (Tr. 12-22.)  Later, Plaintiff obtained additional medical evaluations and submitted the reports to the Appeals Council, which denied review.  (Tr. 2-4; 541-59.)  The instant matter is before this court pursuant to 42 U.S.C. § 405(g).

## STATEMENT OF THE CASE

The facts of the case are set forth in detail in the transcript of proceedings and are briefly summarized here.  At the time of the hearing, Plaintiff was 62 years old.  (Tr. 42.)  She had two grown children and she lives in a house that belongs to one of her children.  (Tr. 421.)  Plaintiff completed a couple of years of community college.  (Tr. 43.)  She has held a variety of jobs, including working in quality assurance for real estate loans, operating plastic mold injection machines, performing electronic soldering, and working as an administrative assistant.  (Tr. 44-48.) Plaintiff testified her body is weak, and the amount of energy she has to expend to get up from a chair to get a glass of water or to fix a meal, overwhelms her.  (Tr. 54.)  She does not want to be around other people, and she would prefer to stay home alone.  (Tr. 52.)  She spends most of her days watching movies, and she smokes a pack of cigarettes everyday.  (Tr. 58; 549.) Plaintiff has Graves' Disease and she developed irritable bowel syndrome that caused her to suffer from unpredictable and urgent diarrhea.  (Tr. 49.)  She testified that her Graves disease is under control.  (Tr. 49; 53.)

Plaintiff testified that she worked while experiencing depression and suffering from Graves Disease until her supervisor engaged in repeated and public criticism of her and eventually, she could no longer function, so she quit. (Tr. 48-49.)

**ADMINISTRATIVE DECISION**

ALJ Chester found Plaintiff's date of last insured for DIB purposes was September 30, 2010. (Tr. 12.) At step one, he found Plaintiff had not engaged in substantial gainful activity since October 17, 2007. (Tr. 14.) At step two, he found Plaintiff had severe impairments of "Graves' disease and depression with borderline and passive-aggressive features." (Tr. 14.) At step three, the ALJ determined Plaintiff's impairments, alone and in combination, did not meet or medically equal one of the listed impairments in 20 C.F.R., Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925 and 416.926). (Tr. 15.) In his step four findings, the ALJ found Plaintiff's statements regarding pain and limitations were not credible to the extent they were inconsistent with the RFC findings. (Tr. 18.) He found that Plaintiff retained the RFC "to perform a full range of work at all exertional levels but with the following nonexertional limitations: she is limited to working with small groups of people (10 or less); and she can tolerate no more than superficial contact with the general public." (Tr. 17.)

ALJ Chester found Plaintiff could perform her past relevant work as audit clerk, solderer, injection molding machine operator and administrative assistant. (Tr. 21.)

**STANDARD OF REVIEW**

In *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), the

1   court set out the standard of review:

2          A district court's order upholding the Commissioner's
        denial of benefits is reviewed *de novo*. *Harman v. Apfel*,
3       211 F.3d 1172, 1174 (9th Cir. 2000).  The decision of the
        Commissioner may be reversed only if it is not supported
4       by substantial evidence or if it is based on legal error.
        *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).
5       Substantial evidence is defined as being more than a mere
        scintilla, but less than a preponderance.  *Id.* at 1098.
6       Put another way, substantial evidence is such relevant
        evidence as a reasonable mind might accept as adequate to
7       support a conclusion.  *Richardson v. Perales*, 402 U.S.
        389, 401 (1971).  If the evidence is susceptible to more
8       than one rational interpretation, the court may not
        substitute its judgment for that of the Commissioner.
9       *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner of
        Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999).

10
           The ALJ is responsible for determining credibility,
11      resolving conflicts in medical testimony, and resolving
        ambiguities.  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th
12      Cir. 1995).  The ALJ's determinations of law are reviewed
        *de novo*, although deference is owed to a reasonable
13      construction of the applicable statutes.  *McNatt v. Apfel*,
        201 F.3d 1084, 1087 (9th Cir. 2000).

14

15      It is the role of the trier of fact, not this court, to resolve

16  conflicts in evidence.  *Richardson,* 402 U.S. at 400.  If evidence

17  supports more than one rational interpretation, the court may not

18  substitute its judgment for that of the Commissioner.  *Tackett*, 180

19  F.3d at 1097;  *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).

20  Nevertheless, a decision supported by substantial evidence will

21  still be set aside if the proper legal standards were not applied in

22  weighing the evidence and making the decision.  *Brawner v. Secretary

23  of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988).  If

24  substantial evidence exists to support the administrative findings,

25  or if conflicting evidence exists that will support a finding of

26  either   disability   or   non-disability,   the   Commissioner's

27  determination is conclusive.  *Sprague v. Bowen*, 812 F.2d 1226, 1229-

28  1230 (9th Cir. 1987).

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 4

**SEQUENTIAL PROCESS**

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).  In steps one through four, the burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits.  *Tackett*, 180 F.3d at 1098-99. This burden is met once a claimant establishes that a physical or mental impairment prevents him from engaging in his previous occupation.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  If a claimant cannot do his past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show that (1) the claimant can make an adjustment to other work; and (2) specific jobs exist in the national economy which claimant can perform.  *Batson v. Commissioner of Social Sec. Admin.,* 359 F.3d 1190, 1193-94 (2004). If a claimant cannot make an adjustment to other work in the national economy, a finding of "disabled" is made. 20 C.F.R. §§ 404.1520(a)(4)(I-v), 416.920(a)(4)(I-v).

**ISSUES**

Plaintiff contends that the ALJ erred by rejecting the opinions of treating and examining doctors, and by adopting the opinions of reviewing doctors. (ECF No. 21 at 14.)  Defendant responds that the ALJ properly weighed the medical evidence, and argues that the Plaintiff failed to establish the evidence obtained after the ALJ decision and submitted to the Appeals Council was "material" and "good cause" existed for failing to obtain the evidence earlier. (ECF No. 23 at 2.)

1

**DISCUSSION**

2 **1.   Medical Opinions**

3       Plaintiff contends that the ALJ erred by improperly weighing

4 the medical evidence.

5       **a.   Sue Bodurtha, ARPN**

6       Plaintiff complains that the ALJ failed to give the proper

7 weight to the February 26, 2008, psychiatric assessment by Sue

8 Bodurtha, ARPN, who diagnosed Plaintiff with major depressive

9 disorder, recurrent, moderate and rule-out pathological grieving.

10 (ECF No. 24 at 1-2.)  Plaintiff emphasizes that Nurse Bodurtha found

11 that Ms. Young had a Global Assessment of 45[1] to 50.  (ECF No. 24 at

12 2; 253-57.)

13       As the ALJ found, Ms. Bodurtha's February 2008 assessment

14 indicated that Plaintiff was very articulate and focused despite her

15 complaints.  (Tr. 19; Tr. 253.)  Also, as the ALJ found, Plaintiff

16 was able to stay on task throughout the interview and appeared to

17 have adequate knowledge and an average IQ.  (Tr. 19; 256.)  The ALJ

18 did not specify the weight he gave to Nurse Bodurtha's opinions, but

19 instead provided a general summary: "the undersigned assigned

20 significant weight to accepted medical source opinions while

21 discounting non-accepted medical opinions where appropriate." (Tr.

22 21.)  The ALJ noted that only Victoria Carroll, M.S. (cand), opined

23

24       [1]A GAF score of 41-50 indicates serious symptoms or any serious

25 impairment in social, occupational, or school functioning.

26 Diagnostic and Statistical Manual of Mental Disorders, 4th Ed. at

27 32.

28

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 6

that Plaintiff was unable to function in a workplace setting.  (Tr. 21.)

The ALJ's findings are supported by the record.  (Tr. 255-56.) While Nurse Bodurtha, arguably a non-accepted medical source,[2] diagnosed major depressive disorder, recurrent, moderate, she did not indicate Plaintiff was unable to work.  (Tr. 253-57.)  Instead, Plaintiff's treatment plan focused on thyroid testing and adjusting her antidepressant medication.  (Tr. 256-57.) Where there is more than one rational interpretation of the evidence, the court must uphold the ALJ's interpretation.  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

Additionally, Plaintiff's argument relies heavily upon the GAF

---

[2]The Code of Federal Regulations distinguishes between those opinions coming from "acceptable medical sources" and those coming from "other sources."  20 C.F.R. §§ 404.1527, 416.913.  Likewise, the Code of Federal Regulations permits the ALJ to accord opinions from other sources less weight than opinions from acceptable medical sources.  *Id.*  Typically, the opinion of a nurse practitioner is an "other source" which the ALJ may accord less weight than acceptable medical sources. 20 C.F.R. § 416.913.  However, the opinion of a nurse practitioner may constitute a treating source when a nurse practitioner works so closely with a treating physician that the nurse practitioner is merely acting as the agent of that treating physician.  *Gomez v. Chater*, 74 F.3d 967 (9th Cir. 1996) (holding an ALJ was entitled to give controlling weight to the opinion of a treating nurse practitioner who worked closely under the supervision of a treating physician).

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 7

1  score assigned to her by Nurse Bodurtha. The Commissioner has
2  explicitly disavowed use of GAF scores as indicators of disability.
3  "The GAF scale . . . does not have a direct correlation to the
4  severity requirements in our mental disorder listing." 65 Fed. Reg.
5  50746-01, 50765 (August 21, 2000). As such, the Plaintiff's GAF
6  score is not determinative of her limitations. Because the record
7  supports the ALJ's findings, the ALJ's determination is conclusive.
8  *Sprague,* 812 F.2d at 1229-1230.

9      **b.**    **W. Scott Mabee, Ph.D.**

10      Plaintiff argues that the ALJ erred by rejecting the opinion of
11  Victoria Carroll, MS (cand), and Amy Robinson, MS, as non-acceptable
12  medical sources because both were working in conjunction with a
13  physician, Scott Mabee, M.D. (ECF No. 21 at 14-16.) Plaintiff
14  asserts the ALJ also erred when he found that these opinions were
15  inconsistent with the findings of the other psychological
16  evaluators. (ECF No. 24 at 2-3.)

17      The ALJ found that Ms. Carroll's opinion was not entitled to
18  significant weight because her conclusion was inconsistent with her
19  findings and with the findings of other psychological evaluators.
20  (Tr. 20.) Additionally, the ALJ noted that while Dr. Mabee's
21  certification indicates he reviewed Ms. Carroll's process and
22  findings, Dr. Mabee did not explicitly adopt or indicate he shared
23  Ms. Carroll's opinion. (Tr. 20.) The ALJ also gave two additional
24  reasons for affording little weight to Ms. Carroll's opinions:
25  Plaintiff's results from the Beck Depression Inventory indicated she
26  over-endorsed her symptoms and Ms. Carroll assessed Plaintiff has
27  having cognitive limitations no more severe than moderate. (Tr.
28  20.) The ALJ concluded that under Ms. Carroll's assessment

Plaintiff would have been disabled for only six months, and in March 2008, her increased antidepressant dosage produced "almost instant results." (Tr. 21.)

Assuming *arguendo* that Ms. Carroll's opinion represented the opinion of Dr. Mabee,[3] the ALJ provided specific and legitimate reasons, supported by the record, for rejecting Ms. Carroll's assessed limitations. A treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a non-examining reviewing or consulting physician's opinion. *See Benecke v. Barnhart*, 379 F.3d 587, 592 (9th Cir. 2004); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). The Commissioner must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of a treating or examining physician. See *Lester*, 81 F.3d at 830. If the opinion is contradicted, it can be rejected for "specific" and "legitimate" reasons that are supported by substantial evidence in the record. *See Andrews*, 53 F.3d at 1043.

As the ALJ noted, Ms. Carroll's February 28, 2008, findings and conclusion were contradictory. For example, test results indicated Plaintiff was able to learn and retain information, and had no difficulty with concentration or attention. (Tr. 243.) Ms. Carroll's check-box form reveals mild limitations related to cognitive factors, along with three moderate and one marked

---

[3]It is unclear from the record, but unnecessary to decide, whether Ms. Carroll worked so closely with Dr. Mabee that she acted as his agent and therefore her opinion should be treated as that of an accepted source. *See Gomez,* 74 F.3d at 967.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 9

1   limitation in social functioning. (Tr. 239.) Ms. Carroll also
2   reported that Plaintiff's score on the Beck Depression Inventory
3   (BDI) indicated "an over-endorsing response," or, in the
4   alternative, a possible "cry for help." (Tr. 243.) While Ms.
5   Carroll's evaluation revealed only mild limitations, she
6   nevertheless concluded, based upon Plaintiff's occupational GAF of
7   48, that Plaintiff was unable to function "in a typical work
8   environment." (Tr. 245.) The ALJ's conclusion that the assessment
9   is internally inconsistent and undermined by Plaintiff's over-
10  endorsed symptoms, is supported by the record and constitutes
11  specific and legitimate reasons to reject Ms. Carroll's assessment.
12  *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003).

13      With regard to Ms. Robinson, the ALJ gave less weight to the
14  February 2009, assessment by Amy Robinson, M.S., because she
15  assessed Plaintiff with moderate cognitive limitations. The ALJ
16  concluded that because this assessment contradicted Dr. Kester's
17  opinion and because counseling notes failed to reveal cognitive
18  limitations, Ms. Robinson's opinion deserved little weight. (Tr.
19  20.)

20      The record reveals Ms. Robinson found Plaintiff had moderate
21  cognitive limitations, is able to follow simple and verbal
22  instructions, and she concluded Plaintiff's ability to reason and
23  use appropriate judgment is clouded by her low self-esteem and is
24  likely to be below average. (Tr. 417; 422.) By contrast, after
25  reviewing Plaintiff's medical records through June, 2008, Eugene
26  Kester, M.D., found that Plaintiff could understand, remember and
27  carry out both simpler and more complex instructions and she would
28  work best in small groups. (Tr. 266.) Dr. Kester also opined that

Plaintiff is able to have superficial contact with the public. (Tr. 266.)

Ms. Robinson relied upon Plaintiff's GAF scores in concluding Plaintiff would have difficulty interacting appropriately with others, and she would have "significant difficulties functioning in a typical work environment." (Tr. 422.) Yet the tests she administered revealed Plaintiff had normal or mildly impaired functioning. (Tr. 421.) As stated above, the ALJ is not required to determine the extent of an individual's disability based entirely on her GAF score. *Howard v. Comm'r,* 276 F.3d 235, 241 (6th Cir. 2002). Additionally, Ms. Robinson's report contains neither objective medical findings nor a description of the rationale, testing, or clinical symptoms supporting her opinion that Plaintiff would suffer serious difficulties in a work environment. Ms. Carroll's report contains internal inconsistencies, which provide a further basis for excluding that medical opinion. *Connett*, 340 F.3d at 874. As a result, the ALJ provided specific and legitimate reasons supported by the record for rejecting Ms. Robinson's opinion.

### c.   Peter Rosales, M.D.

Plaintiff argues the ALJ did not give proper weight to the March 13, 2008, opinion of Peter Rosales, M.D., who concluded that Plaintiff suffered from a major depressive disorder, dysthymic disorder and pseudo dementia, and he assigned her a Global Assessment of Functioning at 45. (ECF No. 24 at 2; Tr. 250-52.) The ALJ noted Dr. Rosales found Plaintiff had mild and restricted range of expression, with good insight and judgment, and with fair immediate and intermediate memory. (Tr. 20.) As the ALJ noted,

within two weeks after an adjustment to her antidepressant dosage, Plaintiff told Dr. Rosales that her depression had decreased significantly. (Tr. 20; 326.)  Also, the record reveals that on March 27, 2008, Dr. Rosales opined Plaintiff's major depressive disorder was stable on medications. (Tr. 328.)  If an impairment can be controlled effectively with treatment, it is not disabling for social security purposes.  See *Warre v. Comm'r of Social Security Administration*, 439 F.3d 1001, 1006 (9th Cir. 2006).  The record reveals that subsequent to Dr. Rosales' assessment, Plaintiff's depression was effectively controlled with medication. As a result, the weight the ALJ assigned to Dr. Rosales' March 13, 2008 assessment was proper.

**2.   New Evidence Reviewed by the Appeals Council**

In this circuit, when the Appeals Council specifically considers new materials in the context of denying the claimant's request for review, "we consider the rulings of both the ALJ and the Appeals Council," and the record includes the ALJ's decision as well as the new evidence. *Ramirez v. Shalala*, 8 F.3d 1449, 1452 (9th Cir. 1993); *Gomez,* 74 F.3d at 971.  If the new evidence shows a reasonable possibility exists that the evidence would change the outcome of the ALJ's determination, then remand is appropriate to allow the ALJ to consider the evidence.[4]  However, if the substantial

---

[4]Contrary to Defendant's argument (ECF No. 23 at 13-17), the court need not decide whether there was good cause for Plaintiff's late submission of evidence. 42 U.S.C. § 405(g) addresses review of an ALJ's decision by the district court – not by the Appeals Council — and the "good cause" requirement therein specifically addresses

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 12

weight of the evidence is irrefutably clear that the claimant is disabled, then a remand for benefits is appropriate. *Mayes v. Massanari*, 276 F.3d 453, 462 (9th Cir. 2001).

The court concludes the new evidence does not provide a basis for changing the ALJ's decision. First, Plaintiff failed to provide an analysis or explanation of why the new evidence raises a reasonable possibility that it would change the outcome of the ALJ's decision. Instead, Plaintiff essentially acknowledges the evidence is cumulative, asserting the evidence was "consistent with the substantial weight of the evidence." (ECF No. 24 at 3-4.) Without specific and cogent briefing, the court ordinarily will not consider an argument. *Carmickle v. Comm'r*, 533 F.3d 1155, 161 n.2 (9th Cir. 2008). Upon review, the three new medical records do not qualify as new and material evidence because none of the records relate to the period on or before the date of the ALJ's decision. See 20 C.F.R. § 404.970; *Bates v. Sullivan*, 894 F.2d 1059, 1064 (9th Cir. 1990), overruled on other grounds, *Bunnell v. Sullivan*, 947 F.2d 341, 342 (9th Cir. 1991). Additional reasons exist to dismiss each medical evaluation.

John Arnold, Ph.D., examined Plaintiff on January 20, 2010, about two months after the hearing. (Tr. 526-31.) First,

---

the failure to "incorporate [new] evidence into the record in a prior proceeding." The Appeals Council's review in this case was a "prior proceeding," and pursuant to *Ramirez*, 8 F.3d at 1452, Plaintiff's additional evidence became part of the administrative record before this case reached federal court and thus, this court considers it.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 13

evaluations conducted after an ALJ's adverse disposition are highly questionable. *See Weetman v. Sullivan*, 877 F.2d 20, 23 (9th Cir. 1989) (new medical report following adverse administrative decision denying benefits carries little, if any, weight); *Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984) (retroactive psychiatric opinions are "notoriously unreliable").

Additionally, Dr. Arnold opined that Plaintiff could carry out simple instructions, she could work without close supervision and would perform best in a position that involved minimal contact with others. (Tr. 529.) These findings are adequately reflected in Plaintiff's RFC that specified Plaintiff is limited to working with small groups of people and can tolerate no more than superficial contact with the general public. (Tr. 17.) As such, Dr. Arnold's evaluation was merely cumulative.

Gregory Charboneau, Ed.D., examined Plaintiff on April 15 and 19, 2010, about four months after the hearing. (Tr. 552.) Largely consistent with other test results in the record, the tests administered by Dr. Charboneau revealed Plaintiff has average cognitive and verbal functioning. (Tr. 556.) The Trailmaking Test results indicated normal functioning on Part A and significant impairment on Part B. (Tr. 556.) Plaintiff admitted to Dr. Charboneau that her depression has improved and as a result, she is able to perform more daily activities than previously. (Tr. 556-58.) Notwithstanding these findings, Dr. Charboneau concluded that it would be "difficult" for Plaintiff "to work an eight-hour day due to her issues with physical health and psychological issues." (Tr. 558.)

Dr. Charboneau's report neither contains objective medical

findings nor a description of the rationale, testing, or clinical symptoms supporting his opinion that Plaintiff's physical condition and psychological issues would prevent her from working. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). Additionally, Dr. Charboneau's review of Plaintiff's history consisted solely of Plaintiff's self-report. (Tr. 552.) The ALJ found Plaintiff to have little credibility, and the Plaintiff did not challenge this finding. (Tr. 18.) The fact that a medical opinion is based on a claimant's subjective testimony – where the claimant's credibility has been undermined – is a specific and legitimate reason for rejecting that medical opinion. *Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989).

The final post-hearing medical evidence was an assessment from Stephen Johnson, M.D., who examined Plaintiff on January 7, 2010, almost two months after the hearing. (Tr. 547-550.) Dr. Johnson, who had treated Plaintiff for four months, indicated that Plaintiff's chronic recurring depression was "stable on current psychotropic regimen." (Tr. 546-47.) Yet Dr. Johnson opined: "It is my opinion that this lady is permanently disabled from gainful employment because of her chronic recurrent depression and personality disorders." (Tr. 547.) Dr. Johnson neither provides objective medical findings nor a description of the rationale, testing, or clinical symptoms supporting his opinion that Plaintiff is permanently disabled. (Tr. 547.) As a result, Dr. Johnson's opinion would deserve little weight. *See Tonapetyan*, 242 F.3d at 1149.

Moreover, it is the role of the ALJ to determine if Plaintiff can or cannot work, not the role of the medical provider.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 15

1 | *Magallanes v. Bowen,* 881 F.2d 747, 751 (9th Cir. 1989)(treating
2 | physician opinion not binding on an ALJ with respect to the
3 | existence of impairment or determination of disability).

4 |    In sum, the post-hearing medical evidence does not warrant a
5 | new hearing, because it is cumulative and because it poses no
6 | "reasonable probability of changing the outcome of the ALJ's
7 | decision." *Mayes*, 276 F.3d at 462.

8 | **CONCLUSION**

9 |    Having reviewed the record and the ALJ's findings, this court
10 | concludes the ALJ's decision is supported by substantial evidence
11 | and is not based on legal error.  Accordingly,

12 |    **IT IS ORDERED:**

13 |    1.   Defendant's's Motion for Summary Judgment **(ECF No. 22)** is
14 | **GRANTED.**

15 |    2.   Plaintiff's Motion for Summary Judgment **(ECF No. 20)** is
16 | **DENIED.**

17 |    The District Court Executive is directed to file this Order and
18 | provide a copy to counsel for Plaintiff and Defendant. Judgment
19 | shall be entered for **Defendant** and the file shall be **CLOSED.**

20 |    DATED May 23, 2012.

22 |                    S/ CYNTHIA IMBROGNO
                  UNITED STATES MAGISTRATE JUDGE

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 16